[Cite as *State v. Kuruc*, 2017-Ohio-4112.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     15CA0088-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMES J. KURUC | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.     14-CR-0396 |

DECISION AND JOURNAL ENTRY

Dated: June 5, 2017

CARR, Judge.

{¶1}     Defendant-Appellant, James Kuruc, appeals from the judgment of the Medina County Court of Common Pleas.  This Court affirms.

I.

{¶2}     During the early morning hours of January 12, 2014, Kuruc met the victim in this matter, a fifteen-year old boy with whom he had communicated online.  The two agreed that Kuruc would pick up the victim at his home after his parents went to bed.  Kuruc then drove the victim to two places before bringing him back to Kuruc's home.  Once there, the two kissed and engaged in oral sex with one another before Kuruc had anal sex with the victim.  They then remained at Kuruc's home for a few hours before Kuruc took the victim home.

{¶3}     Several months later, the victim's father learned that his son had snuck out in the middle of the night to meet Kuruc.  The victim's father also learned that Kuruc was a part-time firefighter for Granger Township.  Because the victim's father was also a firefighter, he was able

to use his contacts to arrange a meeting between himself and Kuruc at the fire station. During the meeting, Kuruc acknowledged that he had met the victim and that they had "made out and fooled around * * *." Following the meeting, the police became involved and interviewed both Kuruc and the victim. During his interview, the victim admitted that he and Kuruc had engaged in both oral sex and anal sex.

{¶4} A grand jury indicted Kuruc on two counts of engaging in unlawful sexual conduct with a minor. Kuruc's first attorney filed a motion to suppress and, after a substitution of counsel, his second attorney supplemented the motion with a supporting memorandum. A hearing on the motion took place, after which the trial court denied it. The matter then proceeded to a bench trial. The court found Kuruc guilty on both counts, sentenced him to three years of community control, and classified him as a Tier II Sexual Offender/Child Victim Offender.

{¶5} Kuruc now appeals from his convictions and raises four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN ADMITTING STATEMENTS MADE BY
THE APPELLANT IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.

{¶6} In his first assignment of error, Kuruc argues that the trial court erred when it denied his motion to suppress. He argues that the court should have suppressed statements he made during a meeting on March 24, 2014, because the statements were elicited in violation of his rights under *Garrity v. New Jersey*, 385 U.S. 493 (1967), and *Miranda v. Arizona*, 384 U.S. 436 (1966). We disagree.

{¶7} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

**Garrity v. New Jersey**

{¶8} "The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination, which is applicable against the states through the Due Process Clause of the Fourteenth Amendment." *State v. Antoline*, 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130, ¶ 12, citing *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). "The privilege is not bound by the form of the proceeding, but exists whenever the individual is sought to be compelled to incriminate himself. The assertion of the privilege cannot be burdened with any sanction making the assertion costly to the individual." (Internal citations omitted.) *Marsh v. Civ. Serv. Comm. of Lorain*, 64 Ohio App.2d 151, 155 (9th Dist.1997). One such sanction is the "threat of removal from office." *Garrity*, 385 U.S. at 500. "The option to lose [a person's] means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." *Id.* at 497. Thus, "when the [S]tate compels testimony by threatening [adverse employment action] unless [a public employee] surrenders the constitutional privilege, the [S]tate obtains the testimony in violation of the Fifth Amendment, and it may not

use that testimony against the [employee] in a subsequent criminal prosecution." *State v. Graham*, 136 Ohio St.3d 125, 2013-Ohio-2114, ¶ 21. If the State attempts to do so, the employee may seek the suppression of his statement(s) under *Garrity*. *See id.* at ¶ 24. *See also State v. Jackson*, 125 Ohio St.3d 218, 2010-Ohio-621.

{¶9} "[F]or a statement to be suppressed under *Garrity*, the employee claiming coercion must have believed that his or her statement was compelled on threat of job loss and this belief must have been objectively reasonable." *Graham* at ¶ 24.

> Determining whether an employee's subjective belief was objectively reasonable requires a court to examine the totality of the circumstances. The circumstances must show some demonstrable coercive action by the [S]tate beyond the general directive to cooperate. Ordinary job pressures, such as the possibility of discipline or discharge for insubordination, are not sufficient to support an objectively reasonable expectation of discharge.

(Internal citations, quotations, and alterations omitted.) *Id.* at ¶ 23. "In examining whether an employee's belief was objectively reasonable under the circumstances, evidence of an express threat of termination or a statute, rule, or policy demanding termination will almost always be sufficient to show coercion." *Id.* at ¶ 24.

{¶10} The trial court found that, on the afternoon of March 24, 2014, Kuruc was employed as a paramedic/firefighter for the Granger Township Fire Department and was taking part in CPR training at the fire station. The court found that the victim's father, a firefighter for another township, had contacted Kuruc's Fire Chief before that day. The purpose for the father's call was to notify the Fire Chief that Kuruc had been sexually involved with his 15-year-old son and to ask the Fire Chief to arrange a meeting between him and Kuruc. The Fire Chief agreed to arrange the meeting and asked K.H., another firefighter who was the president of the firefighter's association, to attend the meeting. Additionally, the victim's father brought to the meeting T.G., a friend who was another firefighter. The court found that the victim's father, K.H., T.G., and

the Fire Chief all knew one another and, with the exception of the Fire Chief, socialized with one another. At approximately 1:00 p.m. on March 24th, they met in the Fire Chief's office before K.H. collected Kuruc from the training room.

{¶11} The trial court found that, during the meeting with Kuruc, no one expressly threatened him. Likewise, the court found that no one discussed the possibility of criminal charges against Kuruc, issued him any warnings regarding his employment, indicated that he should resign, or told him he would be fired. The court found that the victim's father and Kuruc "did most of the talking" and the victim's father told Kuruc "to stay away from [his son]." Following the meeting, Kuruc returned to work.

{¶12} The trial court concluded that no *Garrity* violation occurred during the March 24th meeting. It determined that there was no evidence anyone had expressly threatened to terminate Kuruc's employment if he failed to participate and answer questions. It also determined that there was no evidence Kuruc believed he would be subjected to adverse employment action if he refused to participate or answer questions. Consequently, the court denied Kuruc's motion to suppress.

{¶13} Kuruc does not take issue with any particular factual finding that the trial court made. He argues that the court erred by denying his motion to suppress because the circumstances here were such that the March 24th meeting could have had consequences for his employment. He notes that, as a firefighter who was still in training, he was brought into a closed room along with four larger firefighters, two of whom were his superiors. According to Kuruc, "[t]hrough the course of [their] interaction, it was clear that this was a personnel matter and that [his] employment was on the line." He argues that he was specifically told it would be in his best interest to tell the truth and that it would be pointless to lie because the victim's father

"already knew the truth." He argues that there was evidence the meeting was held for the purpose of investigating the allegations against him and determining whether disciplinary action would be taken. Thus, he argues, *Garrity* applied, and the trial court should have found his statements inadmissible.

{¶14} The victim's father testified that an incident involving his teenage son and an adult male caused him to learn that his son had dealings with Kuruc and that those dealings were of a sexual nature. After learning from his son that Kuruc worked at the Granger Township Fire Department, he decided to call the Fire Chief there as well as K.H., a friend who worked there. The victim's father acknowledged that he too was a firefighter and had known both men for some time. He stated that he wanted the Fire Chief to know that one of his public safety servants "was soliciting sex from minors." Additionally, he wanted an opportunity to confront Kuruc and "make sure he stayed away from [his] son." He testified that he wanted to talk to Kuruc in front of witnesses because he did not want Kuruc to say later that he had been threatened. Both the Fire Chief and K.H., who also happened to be the president of the firefighter's association, confirmed that the victim's father wanted to arrange a meeting between himself and Kuruc.

{¶15} The Fire Chief testified that the meeting ultimately occurred on March 24th because Kuruc was on shift that day and the victim's father was available to come in that afternoon. The Fire Chief testified that he was the one to ask K.H. to attend the meeting. Meanwhile, the victim's father brought along his friend T.G., who was also a firefighter, for "moral support." The victim's father, K.H., and the Fire Chief all testified that the meeting consisted of a discussion between the victim's father and Kuruc. The victim's father and K.H. both testified that, at the start of the meeting, the victim's father introduced himself to Kuruc as

such and asked whether Kuruc would be willing to talk to him. Both men testified that Kuruc agreed to talk to the victim's father.

{¶16} The victim's father, K.H., and the Fire Chief all denied that anyone ever threatened Kuruc during the meeting. K.H. testified that the meeting was held for the purpose of allowing the victim's father to confront Kuruc and ask him questions. He stated that it was not his impression that Kuruc would suffer employment repercussions as a result of the meeting. He acknowledged that the victim's father warned Kuruc to tell the truth because the meeting might result "in future action on his part." He testified, however, that he understood that statement to be a reference to the pursuit of criminal charges. Meanwhile, the Fire Chief testified that he never spoke to Kuruc during the meeting about resigning, issued him any type of written warning, or otherwise threatened his employment. He acknowledged that there was an investigative component to the meeting because he had reason to believe that Kuruc had brought the victim to the fire station after hours. He further acknowledged that there could be employment repercussions for Kuruc, depending on what he said at the meeting. He denied, however, ever forcing Kuruc to answer questions or speak. He maintained that the primary purpose for the meeting was to allow the victim's father to talk with Kuruc in person about the incident with his son.

{¶17} Having reviewed the record, we must conclude that the trial court's factual findings are based on competent, credible evidence. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Kuruc did not testify at the suppression hearing, and the witnesses who did testify stated that no one ever threatened him. There was no evidence that anyone told him to tender his resignation, insinuated that he would be fired if he did not answer, or issued him any warnings or reprimands related to his employment. Consequently, the record supports the

court's findings to that effect. Accepting those findings as true, we next consider its legal conclusion that no *Garrity* violation occurred here. *Id.*

**{¶18}** *Garrity* only applies if the State forces a public employee "to choose between self-incrimination or job forfeiture * * *." *Graham*, 136 Ohio St.3d 125, 2013-Ohio-2114, at ¶ 22, citing *Garrity*, 385 U.S. at 496-497. *Accord Lingler v. Fechko*, 312 F.3d 237, 239 (6th Cir.2002) ("[A] governmental body may not require an employee to waive his privilege against self-incrimination as a condition to keeping his job."); *State v. Groszewski*, 183 Ohio App.3d 718, 2009-Ohio-4062, ¶ 18 (6th Dist.). While the Fire Chief acknowledged that there was an investigative component to the meeting with Kuruc and that his answers could potentially result in employment repercussions for him, there was no evidence that anyone ever expressly threatened Kuruc with job forfeiture. *Compare Garrity* at 494. Moreover, we cannot conclude under the totality of the circumstances that Kuruc possessed an objectively reasonable belief that his statement "was compelled on threat of job loss * * *." *Graham* at ¶ 24. The evidence was such that the victim's father used his personal contacts to set up a meeting with Kuruc for the purpose of confronting him and warning him to stay away from his son. Kuruc did not testify in his own defense, and the other witnesses who testified about the meeting stated that Kuruc agreed to speak with the victim's father, the meeting consisted of the two of them talking, and no one ever threatened Kuruc during the course of the meeting. Kuruc failed to set forth any evidence tending to show that his employer made his job security contingent upon his participation at the meeting. *Compare id.* at 27. Consequently, the trial court did not err when it concluded that no *Garrity* violation occurred.

**Miranda v. Arizona**

{¶19} "When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receive *Miranda* warnings to protect against compelled self-incrimination." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 34, citing *Miranda*, 384 U.S. at 478-479. "Before the strictures of [*Miranda*] even apply, however, a defendant must have been placed into custody and subjected to questioning by either law enforcement or a person acting as an agent of law enforcement." *State v. Jackson*, 9th Dist. Summit No. 26234, 2012-Ohio-3785, ¶ 9, citing *State v. Watson*, 28 Ohio St.2d 15, 26 (1971). "[T]he [*Miranda*] requirements do not apply to admissions made to persons who are not officers of the law or their agents." *State v. Wilson*, 30 Ohio St.2d 199, 203 (1972). Further, "custody" for purposes of *Miranda* exists only where there is a "'restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). "Whether a suspect is in custody depends on the facts and circumstances of each case." (Internal quotations and citations omitted). *State v. Lerch*, 9th Dist. Summit No. 26684, 2013-Ohio-5305, ¶ 8. "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." (Internal citations omitted.) *Howes v. Fields*, 565 U.S. 499, 509 (2012). "The test is whether, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave." (Internal quotations and citations omitted). *Lerch* at ¶ 8.

{¶20} The trial court found that, at the time the meeting with Kuruc occurred, none of the four firefighters who were present there were law enforcement officers or were acting at the direction of law enforcement. The court determined that, four days before the meeting, the Fire

Chief contacted a Medina County Sheriff's Deputy to speak to him about the allegations against Kuruc, but did not tell him about the plan to meet with Kuruc. The court found that the deputy never told the Fire Chief to conduct a meeting with Kuruc. In fact, the court found that the deputy was upset when he learned of the meeting because he "felt it would hinder his investigation." The court found that, during the meeting, Kuruc sat next to the door, no one blocked the door, and no one ever told him he had to stay. The court further found that no one ever threatened Kuruc and, after the meeting, Kuruc returned to work. The court concluded that *Miranda* warnings were unnecessary because Kuruc was not questioned by either law enforcement officers or their agents and he was not in custody during the meeting.

{¶21} Kuruc argues that *Miranda* warnings were necessary here because the fire department often "function[s] as an arm of the police." He further argues that the Fire Chief was acting at the behest of the Sheriff's Office, as evidenced by his phone call to a deputy four days before the meeting. Because he was subjected to custodial interrogation by either the equivalent of law enforcement officers or their agents, Kuruc argues, the court erred by denying his motion to suppress.

{¶22} Because Kuruc does not take issue with any of the trial court's factual findings as they relate to custody, we accept the court's findings as true and proceed directly to the legal question of whether *Miranda* applies here. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Even assuming that the Fire Chief and/or the other firefighters here were acting as agents of the police when they met with Kuruc, the record does not support his assertion that they subjected him to custodial interrogation. The record reflects that he agreed to speak with the victim's father and was never told that he could not leave the Fire Chief's office. The record further reflects that he sat directly next to the door, no one blocked his exit, and he returned to

work after the meeting. *See Howes*, 565 U.S. at 509. There was no evidence that anyone threatened him during the meeting. Indeed, the witnesses who testified stated that the meeting consisted of Kuruc and the victim's father conversing with one another. Under those circumstances, we cannot conclude that a reasonable person "would have believed that he was not free to leave." (Internal quotations and citations omitted.) *Lerch*, 2013-Ohio-5305, at ¶ 8. Thus, *Miranda* did not apply, and the court did not err by denying Kuruc's motion to suppress. Kuruc's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THE GUILTY VERDICT CANNOT BE UPHELD BECAUSE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL DID NOT ESTABLISH APPELLANT'S GUILTY (sic) BEYOND A REASONABLE DOUBT.

{¶23} In his second assignment of error, Kuruc argues that his convictions are based on insufficient evidence. He argues that there was no evidence he either knew the victim's age or was reckless in that regard. He further argues that the victim's testimony, standing alone, was insufficient to support his convictions. We do not agree that Kuruc's convictions are based on insufficient evidence.

{¶24} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. Summit No. 19600, 2000 WL 277908, *1 (Mar. 15, 2000). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

**{¶25}** "No person who is eighteen years of age or older shall engage in sexual conduct with another * * * when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." R.C. 2907.04(A). "A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." Former R.C. 2901.22(C).

**{¶26}** The victim testified that, when these events occurred, he was fifteen years old and a high school freshman. He began communicating with Kuruc through Grindr, an internet-based application that promotes same-sex relationships between men. The victim admitted that Grindr requires users to be 18 years old and that, when he downloaded the application onto his phone, he falsified his birthdate to gain access to it. Nevertheless, he testified that he told Kuruc he was underage when Kuruc began messaging him through the application. The victim testified that Kuruc persisted in communicating with him, despite his disclosure that he was underage.

**{¶27}** The victim testified that he and Kuruc messaged each other through Grindr and another application for one to two weeks before they met in person. During that time, the victim told Kuruc about his involvement in marching band and swim team, as well as the fact that he would soon be getting his temporary driver's license. The victim testified that he ultimately received his temporary driver's license the morning before his encounter with Kuruc and that he

showed Kuruc his new license when they met. The two met during the early morning hours of January 12, 2014.

{¶28} The victim testified that he and Kuruc planned for Kuruc to pick him up after his parents had gone to bed. The victim explained to Kuruc that his parents did not know he was gay and that he would have to sneak out of the house. When Kuruc arrived, the victim met him at the end of his driveway, and Kuruc drove them to Taco Bell. Afterwards, he drove them to the fire station where he was a part-time firefighter and EMT. The victim watched as Kuruc used the keypad on the side door of the station to gain entry. They then went inside for less than an hour, during which they kissed and touched each other both on top of and beneath their clothes. They then drove to Kuruc's house where they immediately went downstairs to his basement bedroom.

{¶29} The victim testified that he and Kuruc briefly watched a movie on Kuruc's bed before they started kissing and touching. They then took a shower together and performed oral sex on one another. Afterwards, they returned to the bedroom, and Kuruc had anal sex with the victim. The victim testified that he and Kuruc then remained in bed for a few hours before Kuruc drove him home. When they got to the victim's house, the victim had Kuruc let him out at the end of the driveway. The victim testified that he arrived home around 5:30 a.m. when his parents were still sleeping.

{¶30} According to the victim, he and Kuruc discussed the seven-year age difference between them multiple times during the course of their evening together. He testified that he specifically told Kuruc that he was 15 years old. He estimated that, between messaging Kuruc and meeting in person, the topic of his age came up at least four times.

**{¶31}** The victim's father testified that he learned about the victim's encounter with Kuruc after the Bath Police Department caught the victim out past curfew with another older male. The victim's father questioned his son and learned that his son was gay and had met Kuruc over the internet. The victim also told him that Kuruc was a firefighter for Granger Township. Because the victim's father was also a firefighter and had contacts at Granger Township, he ultimately spoke with the Fire Chief there. The Fire Chief arranged for him to have a meeting with Kuruc at the fire station.

**{¶32}** The victim's father testified that, during his meeting with Kuruc, Kuruc admitted that he had picked up the victim from his house. He further admitted that he had brought the victim to the fire station and his house and that the two had "made out and fooled around * * *." The victim's father stopped Kuruc from discussing any further details at that point because he did not want to hear exactly what went on between him and his son. Instead, he asked Kuruc if he knew how old the victim was. According to the victim's father, Kuruc hesitated before he said 16. The victim's father then stared at Kuruc, and Kuruc changed his answer to 15. K.H., another firefighter who attended the meeting, also testified that Kuruc admitted knowing that the victim was 15.

**{¶33}** The State also presented the testimony of an administrative assistant for the fiscal officer in Granger Township. The administrative assistant testified that part of her job entails programming codes for new employees to allow them access to buildings within the township. Kuruc was one of the employees whose code she programmed. She testified that the township has a system that logs entries when an employee uses his or her code to enter a building. The system log showed that Kuruc used his personal code to gain access to the fire station at 1:25 a.m. on January 12, 2014.

**{¶34}** Kuruc argues that his convictions are based on insufficient evidence for two reasons. First, he argues that there was no evidence that he knew the victim was less than 16 years old, or was reckless in that regard. He notes that Grindr, the application through which he met the victim, requires users to be 18 years of age. He argues that one could not assume from the victim's physical appearance alone that he was younger than 16. Second, Kuruc argues that the State failed to prove that he engaged in sexual conduct with the victim. He notes that the victim admitted to lying about his age and engaging in deceitful behavior, such as sneaking out of his home. He argues that "[w]ithout any physical or additional evidence * * *, the weight and credibility of [the victim's] testimony is extremely low, rendering it impossible to * * * find that this occurred beyond every reasonable doubt."

**{¶35}** Viewing the evidence in a light most favorable to the prosecution, we must conclude that the State set forth evidence from which a rational trier of fact could have concluded that Kuruc engaged in sexual conduct with the victim and either knew the victim's age or was reckless in that regard. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The victim testified that he and Kuruc engaged in oral sex and that Kuruc then had anal sex with him. The victim also testified that he and Kuruc repeatedly discussed their seven-year age difference and that he specifically told Kuruc he was only 15. Additionally, the victim's father and K.H. both testified that Kuruc admitted knowing the victim was 15. To the extent Kuruc questions the victim's credibility, his argument sounds in weight rather than sufficiency. In a sufficiency analysis, "the persuasiveness of the State's evidence is not at issue." *State v. Stoddard*, 9th Dist. Summit No. 27426, 2015-Ohio-3750, ¶ 25. *See also State v. Anderson*, 9th Dist. Summit No. 27886, 2016-Ohio-7275, ¶ 22. The only issue is whether, viewing the evidence in favor of the State, the State set satisfied its burden of production. *See*

*Stoddard* at ¶ 25. "[T]his Court has repeatedly held that '[i]n sex offense cases, * * * the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration.'" *State v. Powell*, 9th Dist. Lorain No. 12CA010284, 2014-Ohio-63, ¶ 20, quoting *State v. Evans*, 9th Dist. Medina No. 09CA0049-M, 2010-Ohio-3545, ¶ 12. Because the record reflects that the State satisfied its burden of production, Kuruc's argument to the contrary lacks merit. His second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

> TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL THEREBY VIOLATING APPELLANT'S RIGHT TO COUNSEL.

{¶36} In his third assignment of error, Kuruc argues that he received ineffective assistance of counsel. Because his argument involves several different aspects of his counsel's performance, we separately address each alleged instance of ineffective assistance.

{¶37} In order to prevail on a claim of ineffective assistance of counsel, Kuruc must show that his "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Kuruc must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, he must demonstrate that but for counsel's errors, there is a reasonable probability that the results of his trial would have been different. *Keith* at 534.

**Alleged Ineffectiveness Related to Suppression**

{¶38} Kuruc argues that his trial counsel was ineffective because he failed to file a brief in support of his motion to suppress and waived his opportunity to present a closing argument at the conclusion of the suppression hearing. According to Kuruc, "[t]he docket reflects that no memorandum in support [of his motion to suppress] was ever filed, and that while the issues were raised, no argument or advocacy in regards to the Motion to Suppress ever occurred." He further argues that his counsel failed to thoroughly cross-examine the witnesses at the suppression hearing. Specifically, he argues that his counsel never asked K.H. about the role of the firefighter's association, which was "highly significant" because it could have shed light on whether Kuruc's discussion at the fire station could have led to his termination.

{¶39} We note that Kuruc had two different attorneys in this matter, but he makes no attempt to distinguish between the two. Although his first attorney filed his motion to suppress without a supporting memorandum, his second attorney filed a supporting memorandum one week before the suppression hearing. His second attorney's memorandum outlined the facts pertinent to Kuruc's motion as well as the supporting case law. Accordingly, the record does not support Kuruc's assertion that "no memorandum in support was ever filed * * *."

{¶40} With respect to Kuruc's argument that his counsel was ineffective for failing to give a closing argument at the conclusion of the suppression hearing, the record reflects that his second attorney outlined the facts, law, and issues for the court at the start of the hearing. He then indicated at the close of the hearing that he would "leave it up to the Court's discretion in terms of what the Court finds in terms of the evidence shown in this case." Although he chose not give a closing argument, the record does not support the conclusion that he failed to advocate on Kuruc's behalf. He made the court aware of Kuruc's position on the issues and conducted

detailed cross-examinations of the witnesses who testified at the suppression hearing. Kuruc has not shown that, had his counsel also given an argument at the close of the hearing, the trial court would have ruled differently on his motion to suppress. *See Keith*, 79 Ohio St.3d at 534.

**{¶41}** Finally, the record does not support Kuruc's assertion that his counsel was ineffective for not thoroughly cross-examining K.H. about the firefighter's association. *See State v. Brown*, 9th Dist. Lorain No. 15CA010805, 2016-Ohio-7537, ¶ 7, quoting *State v. Smith*, 9th Dist. Wayne No. 12CA0060, 2013-Ohio-3868, ¶ 23 ("[D]ecisions regarding cross-examination are within the trial counsel's discretion and 'cannot form the basis for a claim of ineffective assistance of counsel.'"). K.H. testified that the Fire Chief asked him to attend the meeting between the victim's father and Kuruc and, later, to create a memorandum of what was said at the meeting. He testified that he was the president of the firefighter's association and was at the meeting for the protection of both the victim's father and Kuruc "to make sure nothing happened or * * * that [Kuruc] wasn't threatened * * *." The evidence was that K.H. knew the victim's father, was aware of the allegations, and attended the meeting as a witness. To the extent Kuruc suggests that the firefighter's association may have had some role to play in employee discipline decisions, we have already determined that no one at the meeting ever threatened Kuruc's employment, either directly or indirectly. Moreover, K.H. specifically testified that he attended the meeting for Kuruc's protection, not because Kuruc was facing disciplinary charges. It is unclear how additional questions about the role of the firefighter's association would have aided Kuruc in developing his argument under *Garrity*. *See State v. Buzek*, 9th Dist. Medina No. 14CA0011–M, 2015-Ohio-4416, ¶ 7, quoting *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶ 4 ("'[S]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel.'"). In sum, Kuruc has not

shown that he received ineffective assistance of counsel with regard to the suppression stage of the proceedings.

**Alleged Ineffectiveness Related to Objections**

{¶42} Kuruc next argues that his counsel was ineffective because he failed to object to certain irrelevant and prejudicial evidence. Specifically, he argues that his counsel should have sought to exclude: (1) a photograph of the victim, taken from the Bureau of Motor Vehicles ("BMV"); and (2) testimony related to the fact that Kuruc was a public servant.

{¶43} "[T]his Court has consistently held that 'trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.'" *State v. Bradford*, 9th Dist. Summit No. 22441, 2005-Ohio-5804, ¶ 27, quoting *State v. Taylor*, 9th Dist. Lorain No. 01CA007945, 2002-Ohio-6992, ¶ 76. The record reflects that the State introduced a BMV photograph of the victim because it was taken the morning before he met Kuruc when the victim received his temporary driver's license. The State introduced the photograph as evidence of the victim's physical appearance on that date. Because part of the issue in this case was whether Kuruc either knew the victim was under 16 years of age or was reckless in that regard, the victim's physical appearance at the time of the incident was at least arguably relevant here. Thus, defense counsel could have made a strategic decision not to object to the photograph. *See Bradford* at ¶ 27, quoting *Taylor* at ¶ 76.

{¶44} With regard to his counsel's alleged failure to object to testimony that Kuruc was a public servant, Kuruc has not cited to any specific portion of the record in support of his argument. *See* App.R. 16(A)(7). It is not clear whether he takes issue with a specific witness' testimony regarding his public servant status or whether he believes his counsel should have objected to any reference to his being a public servant. *See id.* There was no dispute at trial that

Kuruc was a part-time firefighter/EMT. In fact, a portion of the events that occurred here took place at the fire station where he worked. Absent any clear argument from Kuruc, supported by citations to the record, this Court will not conclude that his counsel was ineffective for failing to object to some or all of the testimony regarding his public servant status. *See State v. Vu*, 9th Dist. Medina No. 11CA0042-M, 2012-Ohio-746, ¶ 28 ("As this Court has repeatedly held, an appellant bears the burden of providing this Court with applicable legal authority and citations to the record in support of those legal propositions."). As such, we reject Kuruc's argument regarding his counsel's alleged failure to object.

**Alleged Ineffectiveness Related to Counsel's Failure to Argue**

{¶45} Kuruc next argues that his counsel was ineffective because he failed to emphasize the victim's lack of credibility. He asserts that his counsel should have fully pursued the victim's untruths when conducting his cross-examinations. He also argues that his counsel was ineffective because he failed to file a written closing argument in this matter.

{¶46} The record does not support Kuruc's assertion that his counsel failed to fully pursue the victim's alleged lack of credibility at trial. Defense counsel repeatedly asked the victim about the fact that he had lied about his age to gain access to Grindr, had deceived his parents when he repeatedly snuck out of the house to meet men, had lied about how many times he had snuck out, and had deleted the internet-based messaging applications from his electronic devices before his parents confiscated them. Defense counsel also raised issues with the victim's credibility when questioning the victim's father and the detective who interviewed the victim. Thus, defense counsel repeatedly drew the victim's credibility into question throughout the trial.

{¶47} With regard to defense counsel's failure to tender a closing argument, we note that this was a bench trial. When the trial concluded, the court asked the attorneys to file written

closing arguments rather than presenting their closing arguments in person. Kuruc is correct that his counsel never filed a written closing argument. He has not shown, however, that he was prejudiced as a result of his counsel's failure to do so. *See Keith*, 79 Ohio St.3d at 534. Because this was a bench trial and defense counsel had already repeatedly drawn the victim's testimony into question during trial, it is unclear how additional argument from counsel would have changed the result in this matter. *See Akron v. Batten*, 9th Dist. Summit No. 15022, 1991 WL 172424, *2 (Sept. 4, 1991). Thus, we reject Kuruc's argument to the contrary.

**Alleged Ineffectiveness Related to Kuruc's Jury Waiver**

{¶48} Kuruc next argues that his counsel was ineffective because he failed to ensure that Kuruc signed a written jury waiver. According to Kuruc, "[n]o signed or written jury waiver was ever executed, only waived orally by the Trial Court and the matter proceeded to Bench Trial."

{¶49} The record reflects that a written jury waiver was filed in this case on May 20, 2015. The written waiver bears Kuruc's signature. Additionally, that same day, the court spoke with Kuruc on the record and confirmed his waiver in person. Because the record contravenes Kuruc's argument, we reject it.

**Alleged Ineffectiveness Related to Grindr Records**

{¶50} Kuruc's final argument is that his counsel was ineffective because he did not subpoena records from Grindr regarding the victim's age. Kuruc fails to explain his argument other than to note that (1) Grindr requires users to be 18 years of age, and (2) the State was required to prove that he knew the victim was less than 16 years of age. *See* App.R. 16(A)(7). The victim, however, freely admitted that he falsified his age on Grindr so that he could use the internet-based application. It is unclear why defense counsel would have had to subpoena the Grindr records when the victim admitted that he lied about his age to access Grindr. As this

Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Because Kuruc has not shown that he received ineffective assistance of counsel, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN FAILING TO RECUSE ITSELF PURSUANT
TO JUDICIAL R. 2.11(C).

{¶51} In his fourth assignment of error, Kuruc argues that the trial judge erred by not disqualifying herself due to a potential conflict. "'Matters of disqualification of trial judges lie within the exclusive jurisdiction of the chief justice of the Supreme Court of Ohio and his [or her] designees. This Court is without authority to review a matter involving the disqualification of a judge." (Internal citations omitted.) *State v. Fry*, 9th Dist. Summit No. 26121, 2012-Ohio-2602, ¶ 49, quoting *State v. O'Neal*, 9th Dist. Medina No. 07CA0050-M, 2008-Ohio-1325, ¶ 15. As such, we lack jurisdiction to consider Kuruc's fourth assignment of error.

### III.

{¶52} Kuruc's first, second, and third assignments of error are overruled. We lack jurisdiction to consider his fourth assignment of error. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

MORGAN RAYE CARUSO and MARY CATHERINE O'NEILL, Attorneys at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and JAMES M. PRICE, Assistant Prosecuting Attorney, for Appellee.