[Cite as *State v. Kennard*, 2022-Ohio-2055.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29201 |
| | : | |
| v. | : | Trial Court Case No. 2021-CRB-1986 |
| | : | |
| TRAVIS KENNARD | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 17th day of June, 2022.

. . . . . . . . . . .

BARBARA J. DOSECK, Atty. Reg. No. 0079159, STEPHANIE L. COOK, Atty. Reg. No. 0067101 and ANDREW D. SEXTON, Atty. Reg. No. 0070892, City of Dayton Prosecutor's Office, 335 West Third Street, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellee

PAUL E. WAGNER, Atty. Reg. No. 0067647, 507 South Broadway Street, Greenville, Ohio 45331
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Travis Kennard, appeals from his conviction for domestic violence in the Dayton Municipal Court following a bench trial; he had been found guilty of domestic violence and assault, but the trial court merged those offenses for sentencing.   In support of his appeal, Kennard contends that the trial court's guilty verdicts were not supported by sufficient evidence and were against the manifest weight of the evidence.   Kennard also contends that his trial counsel provided ineffective assistance by having him testify at trial and by failing to advise him that he had a right not to testify.   For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On June 13, 2021, Kennard was charged in the Dayton Municipal Court with one first-degree misdemeanor count of domestic violence in violation of R.C. 2919.25(A) and one first-degree misdemeanor count of assault in violation of R.C. 2903.13(A).   The charges stemmed from allegations that on the night of June 11, 2021, Kennard punched his live-in girlfriend in the head multiple times with his fist, causing her to fall and injure her head and lower back.   Kennard pled not guilty to the charges and the matter proceeded to a bench trial.

{¶ 3} At trial, the State presented testimony from the victim of the offenses in question, S.W., and testimony from one of the investigating police officers, Officer Joshua Blankley of the Dayton Police Department.   The State also called Dominique Lemasters,

a neighbor who allegedly witnessed the altercation between Kennard and S.W. In addition to these witnesses, Kennard testified in his own defense. The witnesses provided the following testimony at trial.

{¶ 4} S.W. testified that Kennard was her boyfriend and that she and Kennard had lived together since 2019 in a Dayton residence with her mother, brother, nephew, and two nieces. With regard to the June 11, 2021 incident in question, S.W. testified that she had been highly intoxicated that night and only remembered speaking to police officers after sustaining injuries to her head and back. Specifically, S.W. recalled having a gash on the right back side of her head that was bleeding and a swollen and bruised lower back. S.W. testified that she did not remember how she received these injuries but did recall hitting the concrete steps outside the door to her residence.

{¶ 5} Dominique Lemasters testified that she lived three houses down from Kennard and S.W. on the same side of the street. Lemasters also testified that she had no personal relationship with either Kennard or S.W. Lemasters claimed that, prior to the incident in question, she had only spoken to S.W. a couple of times in passing. As for Kennard, Lemasters testified that she knew he resided with S.W., but did not know his name.

{¶ 6} Concerning the night of June 11, 2021, Lemasters testified that she was sitting outside on her front porch smoking a cigarette when she saw an altercation between Kennard and S.W. Lemasters testified that she saw Kennard punch S.W. in the head at least twice while they were standing near their next-door neighbor's front yard. According to Lemasters, Kennard punched S.W. in the back or side of the head with a

closed fist, which caused S.W. to fall down onto some concrete steps in front of their house. Lemasters testified that she clearly saw Kennard punch S.W. twice before Kennard moved his body in a manner that blocked her view of what was happening. Lemasters also testified that Kennard yelled "you're such a bitch" multiple times while he punched S.W. Trial Tr. (June 22, 2021), p. 23.

{¶ 7} Lemasters testified that after Kennard punched S.W., she saw Kennard run into the middle of the street and scream at some neighbors who had seen the altercation from inside their vehicle. Lemasters also testified that when she saw that S.W. had been knocked down, she went over to assist S.W. on the concrete steps. Lemasters testified that S.W. did not get up right away, but eventually sat up from the steps and looked very dazed. During that time, Lemasters saw that S.W.'s head was bleeding and that S.W. had blood dripping off of her hand and down her neck. Lemasters testified that she gave a neighbor named "Jamie" her cell phone to call the police while she stayed with S.W. Tr. at 24.

{¶ 8} Continuing, Lemasters testified that while she was with S.W., Kennard came back from the street and ran over to S.W. During that time, Lemasters heard Kennard make statements indicating that he did not do anything wrong and that S.W. was crazy. In an effort to prevent an altercation with Kennard, Lemasters testified that she called her boyfriend over to help with the situation. Lemasters testified that she and her boyfriend tried to keep Kennard from getting to S.W. by placing their bodies in between them. Lemasters testified that she stayed with S.W. until S.W. saw blood on her hand and started to "freak out." Tr. at 25. Lemasters testified that when S.W. saw the blood, she

wanted to see her mother and ran inside her house with Kennard following her.

{¶ 9} Lemasters testified that, after S.W. and Kennard went inside their house, she stood outside the residence while waiting for the police to arrive. Lemasters testified that during that time, she saw another altercation between Kennard and S.W. through their glass storm door. Specifically, Lemasters saw Kennard grab the back of S.W.'s head by her hair and throw S.W. to the ground. Shortly thereafter, Lemasters noticed that the police had arrived down the street at the wrong residence. Lemasters testified that she went over to the police and directed them to Kennard and S.W.'s house. Lemasters also testified that she later provided the police with a statement of her observations.

{¶ 10} Officer Blankley of the Dayton Police Department testified that on the night in question, he and Officer Scotty Fair were dispatched to Kennard and S.W.'s residence on the report of a fight. Officer Blankley testified that he talked with S.W. after medics treated her inside of her residence. During that time, Officer Blankley observed that S.W. appeared to be intoxicated and that she had a head injury. Specifically, Officer Blankley testified that he observed a one-inch laceration on S.W.'s scalp that was bleeding through her hair. Officer Blankley also testified that S.W. told him that she had injured her back or her side. Officer Blankley, however, did not see any physical injury to that effect. Officer Blankley also testified that S.W. was uncooperative in that she would only discuss her injuries and not the situation with Kennard.

{¶ 11} The State rested its case after presenting the aforementioned testimony. Kennard then moved for a judgment of acquittal under Crim.R. 29 on grounds that Lemasters' testimony as to how S.W. was injured did not make sense and was insufficient

to find him guilty of domestic violence and assault. Specifically, Kennard argued that S.W. could not have fallen backwards and injured the back of her head on the concrete steps if Kennard had hit her on the back of the head as testified to by Lemasters. The trial court did not find Kennard's argument persuasive and overruled his Crim.R. 29 motion. Kennard thereafter took the witness stand and testified in his defense.

{¶ 12} During his testimony, Kennard confirmed that S.W. had been his girlfriend for over two years and that he and S.W. had been together at their home on the night of June 11, 2021. Kennard testified that on that night, he and S.W. were eating nachos and drinking shots upstairs when S.W. left to get some cigarettes with her niece. Kennard testified that about 10 or 15 minutes after S.W. left, he heard a commotion outside. Kennard claimed that when he went outside to see what was going on, he saw S.W. "back bent" over the concrete steps to their front porch. Tr. at 38. Kennard testified that he did not actually see S.W. fall on the steps, but assumed that was how S.W. became injured.

{¶ 13} Kennard also testified that the neighbors to the side of his house and some people in a car across the street were yelling and causing a lot of commotion. Kennard claimed that when he went over to ask S.W. if she was ok, the neighbors started pushing him out of the way and accusing him of injuring S.W. Kennard claimed that he then went into the street to see who was yelling inside the car. Upon doing so, Kennard claimed that he was threatened with a gun by an individual named "Janie Williams." Tr. at 40. Throughout his testimony Kennard maintained that he had not hit or pushed anyone on the night in question. Kennard also claimed that he had never seen Lemasters before

the day of trial.

{¶ 14} After hearing all the testimony, the trial court found Kennard guilty of both domestic violence and assault. In reaching that decision, the trial court noted that Kennard's testimony did not make sense and was not credible. As a result, the trial court relied on Lemasters' testimony, which the trial court found credible.

{¶ 15} Once the guilty verdicts were announced, the trial court ordered a presentence investigation report and scheduled the matter for sentencing. At sentencing, the State conceded that the domestic violence and assault offenses were allied offenses of similar import that merged for purposes of sentencing, and it elected to have Kennard sentenced for domestic violence. Following the State's election, the trial court sentenced Kennard to 180 days in jail with 120 days suspended and 33 days of jail-time credit, for a total of 27 days remaining to be served. The trial court also ordered Kennard to be placed on intensive supervised probation for one year following his release from jail and ordered him to pay a $25 fine and court costs.

{¶ 16} Kennard now appeals from his conviction, raising four assignments of error for review.

**First, Second, and Third Assignments of Error**

{¶ 17} Because they are interrelated, we will address Kennard's first three assignments of error together. Under his first two assignments of error, Kennard contends that the guilty verdicts in this case were not supported by sufficient evidence and were against the manifest weight of the evidence. Under his third assignment of

error, Kennard contends that the trial court erred by denying his Crim.R. 29 motion for an acquittal. Because a Crim.R. 29 motion tests the sufficiency of the evidence presented at trial, rulings on Crim.R. 29 motions are reviewed under the same standards that apply to a review for sufficiency of the evidence. *State v. Baker*, 2d Dist. Greene No. 2009-CA-62, 2010-Ohio-2633, ¶ 16; *State v. Crabtree*, 2d Dist. Champaign No. 2019-CA-1, 2019-Ohio-3686, ¶16, citing *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996). Therefore, under his third assignment of error, Kennard's is also challenging the sufficiency of the evidence.

*Sufficiency of the Evidence*

{¶ 18} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 19} In challenging the sufficiency of the evidence, Kennard does not argue that

the State failed to present sufficient evidence establishing each element of the domestic violence and assault offenses at issue. Instead, Kennard asserts that the primary evidence used to establish those elements—Lemasters' testimony—was inconsistent in various respects. This assertion, however, relates to Lemasters' credibility, which concerns the weight of the evidence, not its sufficiency. *See State v. James*, 9th Dist. Lorain No. 17 CA 011234, 2019-Ohio-2604, ¶ 10, citing *State v. Kuruc*, 9th Dist. Medina No. 15 CA 0088-M, 2017-Ohio-4112, ¶ 35. "In a sufficiency analysis, 'the persuasiveness of the State's evidence is not at issue.' " *Kuruc* at ¶ 35, quoting *State v. Stoddard*, 9th Dist. Summit No. 27426, 2015-Ohio-3750, ¶ 25. Again, "the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." *Dennis* at 430.

{¶ 20} As previously discussed, the trial court in this case found Kennard guilty of domestic violence in violation of R.C. 2919.25(A) and assault in violation of R.C. 2903.13(A). Domestic violence is committed when a person "knowingly cause[s] * * * physical harm to a family or household member." R.C. 2919.25(A). Assault is committed when a person "knowingly cause[s] * * * physical harm to another[.]" R.C. 2903.13(A). The term "physical harm" is defined as "any injury, illness, or physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 21} In this case, Lemasters' eyewitness testimony was sufficient to establish that Kennard knowingly caused physical harm to S.W. This is because Lemasters testified that she saw Kennard punch S.W. in the head at least twice, causing S.W. to fall

down on some concrete steps and injure her head. S.W.'s resulting head injury was confirmed not only by Lemasters' testimony, but also by the testimony of Officer Blankley and S.W.

{¶ 22} S.W.'s testimony as to her cohabitation with Kennard also established her status as a "family or household member" for purposes of the domestic violence offense. The term "family or household member" includes "a person living as a spouse." R.C. 2919.25(F)(1)(a)(i). "Person living as a spouse" is someone who "has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2). In this case, S.W. testified that she and Kennard had been living together since 2019, which was within five years of the incident in question. Therefore, given the testimony presented at trial, we find that the State presented sufficient evidence of both domestic violence and assault.

*Manifest Weight of the Evidence*

{¶ 23} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of facts " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered.' " *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 24} "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶14. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Therefore, this court will not substitute its judgment for that of the trier of fact on the issue of witness credibility "unless it is patently apparent that the trier of fac[t] lost its way in arriving at its verdict." (Citation omitted.) *Wilson* at ¶ 17.

{¶ 25} In challenging the weight of the evidence, Kennard claims that Lemasters' testimony was unreliable because it contained several inconsistencies. Specifically, Kennard argues that Lemasters initially testified that she saw Kennard strike S.W. on the side of the head and then later testified that Kennard struck S.W. on the back of the head. Kennard also argues that Lemasters first testified that S.W. fell backward onto the concrete steps and then later testified that S.W. fell onto the ground. Kennard further argues that Lemasters initially testified that Kennard tried to strike her and her boyfriend when Lemasters was checking on S.W., and then later testified that Kennard was simply trying to get around them. Kennard also argues that Lemasters initially testified that he

screamed at the neighbors and then later testified that he tried to strike the neighbors. Additionally, Kennard asserts that Lemasters' testimony is unclear as to whether she first saw Kennard in the street or in their neighbor's front yard on the night in question.

**{¶ 26}** After reviewing Lemasters' testimony, we find that the inconsistencies alleged by Kennard were either trivial or explained by Lemasters while testifying. Regardless, this court must give substantial deference to the trial court's resolution of any conflicting testimony and to the trial court's determination as to witness credibility. *Lawson* at *4. In other words, it was within the province of the trial court to determine whether Lemasters' testimony was credible. We note that " '[a] verdict is not against the manifest weight of the evidence [simply] because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events.' " *State v. McCary*, 2d Dist. Montgomery No. 28250, 2019-Ohio-4596, ¶ 33, quoting *State v. Oswald*, 9th Dist. Summit No. 28633, 2018-Ohio-245, ¶ 25. (Other citations omitted.)

**{¶ 27}** In this case, the trial court found that Lemasters' testimony was credible and that Kennard's testimony did not make sense and was not credible. Upon review, we find that the trial court's credibility determination was sound and that it did not create a manifest miscarriage of justice that warranted a reversal of Kennard's conviction. We also do not find that the evidence weighed heavily against finding Kennard guilty of domestic violence and assault. Therefore, in addition to being supported by sufficient evidence, the trial court's conclusion that Kennard was guilty of domestic violence and assault was not against the manifest weight of the evidence.

**{¶ 28}** Because the guilty verdicts at issue were supported by sufficient evidence

and were not against the manifest weight of the evidence, Kennard's first, second, and third assignments of error are overruled.

**Fourth Assignment of Error**

{¶ 29} Under his fourth assignment of error, Kennard contends that his trial counsel provided ineffective assistance by having him testify at trial and by failing to advise him of his right not to testify.

{¶ 30} In order to succeed on an ineffective assistance claim, a defendant must establish: (1) his trial counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688; *Bradley* at 142. To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 31} In reviewing ineffective assistance claims, " 'we will not second-guess trial strategy decisions, and "a court must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance." ' " *State v. English*, 2d Dist. Montgomery No. 26337, 2015-Ohio-1665, ¶ 10, quoting *State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998), quoting *Strickland* at 689. Therefore, " 'trial counsel is allowed wide latitude in formulating trial strategy[.]' " *State v. Collins*, 2d Dist. Miami No. 2010-CA-22, 2011-Ohio-4475, ¶ 15, quoting *State v. Olsen*, 2d Dist. Clark No. 09-CA-110, 2011-Ohio-3420, ¶ 121. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

{¶ 32} As previously noted, Kennard argues that his trial counsel provided ineffective assistance by having him testify at trial. However, "[t]he decision as to whether a defendant should testify is a matter of trial strategy." *State v. Faulkner*, 2d Dist. Clark No. 2892, 1993 WL 125452, *3 (Apr. 22, 1993). "Since the advice of an attorney to their client regarding the decision to testify is a tactical decision, it cannot be challenged on appeal on the grounds of ineffective assistance of counsel, unless it is shown that the decision was the result of coercion." *State v. Ryan*, 6th Dist. Wood No. WD-05-5120, 2006-Ohio-5120, ¶ 23, citing *State v. Winchester*, 8th Dist. Cuyahoga No. 79739, 2002-Ohio-2130, ¶ 12. (Other citations omitted.)

{¶ 33} In this case, Kennard neither alleges nor demonstrates that his trial counsel coerced him to testify at trial. Instead, Kennard claims that his trial counsel failed to advise him that he had a right not to testify. This alleged failure, however, is a matter

outside the record. *State v. Watters*, 2016-Ohio-8083, 76 N.E.3d 723, ¶ 27 (2d Dist.) ("a claim of lack of communication between a defendant and his trial counsel is not one that can be borne out by the record"). "A claim of ineffective assistance of counsel cannot be asserted on direct appeal if it relies on matters outside the record." *State v. Harris*, 2d Dist. Montgomery No. 27179, 2017-Ohio-9052, ¶ 19, citing *State v. Thomas*, 2d Dist. Montgomery No. 26907, 2017-Ohio-5501, ¶ 28. Therefore, because Kennard's ineffective assistance claim relies on information outside the record, it is not an issue that we can review on direct appeal.

{¶ 34} As a further matter, Kennard's claim that the outcome of his trial would have been different had he not testified rests on mere speculation. " 'Such speculation is insufficient to establish ineffective assistance.' " *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 119, quoting *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 217. (Other citations omitted.) For this reason, Kennard cannot establish that he was prejudiced by his trial counsel's decision to have him testify.

{¶ 35} Because Kennard failed to establish that his trial counsel's performance was deficient and prejudiced him, his ineffective assistance claim fails. Accordingly, Kennard's fourth assignment of error is overruled.

## Conclusion

{¶ 36} Having overruled all four assignments of error raised by Kennard, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.

Copies sent to:

Barbara J. Doseck
Stephanie L. Cook
Andrew D. Sexton
Paul E. Wagner
Hon. Christopher D. Roberts