[Cite as *State v. James*, 2019-Ohio-2604.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 17CA011234 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| WALTER L. JAMES | COURT OF COMMON PLEAS |
| | COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 16CR094820 |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2019

HENSAL, Judge.

{¶1}    Walter James appeals his convictions from the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}    The victim in this case is Mr. James's stepdaughter who, at the time of trial, was 28 years old.  Mr. James married the victim's mother ("S.H.") when the victim was four years old.  S.H. had a son from a previous relationship, and had a daughter with Mr. James after they married.  The family of five moved into a ranch-style home when the victim was 7 years old.  According to the victim, Mr. James started sexually abusing her around that time.  The abuse started with Mr. James kissing her and touching her vagina as he put her to bed at night.[1]  When she was 10 years old, the victim moved from her first-floor bedroom to a basement bedroom.

---

[1] The victim could not recall whether the initial touching occurred over, or beneath her clothes.

Once she moved to the basement, Mr. James began inserting his fingers into her vagina "most nights[.]" This progressed to the victim performing oral sex on Mr. James by the time she was 12 or 13 years old, and to having vaginal intercourse with him when she was around 13 years old.

{¶3} In 2003, the victim confided in one of her youth-group friends about the abuse. That friend told the pastor's wife, who told the pastor, who then contacted Children's Services. Children's Services removed Mr. James from the family home while they conducted an investigation. Fearing that her family would be split up, the victim recanted and the investigation ended without charges being filed. Mr. James then returned to the family home.

{¶4} Shortly after his return, S.H. had a mental breakdown, which lasted about three years. During that time, S.H. was heavily medicated and spent most of her time in her bedroom while Mr. James looked after the three children. Within a few months after his return, Mr. James began having sex with the victim multiple times a week. The abuse continued into adulthood, with the victim explaining that she continued to have sex with Mr. James even after she moved out of the family home. She explained that sex eventually became the "price" she had to pay for him doing things for her, including work on her home or car.

{¶5} The abuse stopped in 2014, and the victim stopped communicating with Mr. James in 2015. S.H. took notice and reached out to her daughter. The victim met with S.H. for lunch and disclosed the abuse. S.H. took several days to process the information, and then confronted Mr. James. According to S.H., Mr. James acknowledged the truth of the allegations and left the family home. S.H. initially sought a dissolution of the marriage, but eventually filed for divorce.

{¶6}    The victim testified that she initially did not report the abuse to the police because she had hoped that Mr. James would continue to provide for her mother and other siblings, which she felt Mr. James owed to her given the years of abuse.  When he stopped supporting them, she reported the abuse to the police.

{¶7}    A grand jury indicted Mr. James on one count of rape in violation of Revised Code Section 2907.02(A)(1)(b), one count rape in violation of Section 2907.02(A)(2), four counts of sexual battery in violation of Section 2907.03(A)(5), and one count of unlawful sexual contact with a minor in violation of Section 2907.04(A).  Mr. James pleaded not guilty and the matter proceeded to a jury trial.

{¶8}    At trial, the State presented testimony from the victim and S.H.  Mr. James did not testify, nor did he present any evidence aside from three letters that the victim wrote to him contemporaneous with the alleged abuse.  The jury ultimately returned a verdict of guilty on all counts, and the trial court sentenced Mr. James to a total of 24 years of incarceration.  He now appeals, raising two assignments of error for our review, which we will address in reverse order to facilitate our review.

II.

ASSIGNMENT OF ERROR II

THERE WAS INSUFFICIENT EVIDENCE TO CONVICT MR. JAMES FOR THE FOLLOWING: RAPE IN VIOLATION OF R.C. [] 2907.02(A)(1)(b); RAPE IN VIOLATION OF R.C. [] 2907.02(A)(2); FOUR (4) COUNTS OF SEXUAL BATTERY IN VIOLATION OF R.C. [] 2907.03(A)(5); AND UNLAWFUL SEXUAL CONDUCT WITH A MINOR IN VIOLATION OF R.C. [] 2907.04(A).

{¶9}    In his second assignment of error, Mr. James challenges the sufficiency of the evidence presented at trial.  Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶10} As the State points out, Mr. James has not argued that the State failed to present sufficient evidence relative to the elements of each offense. Rather, he asserts that the State failed to present sufficient evidence because the witnesses provided inconsistent testimony. This assertion relates to the credibility of the witnesses, which sounds in weight, not sufficiency. *State v. Kuruc*, 9th Dist. Medina No. 15CA0088-M, 2017-Ohio-4112, ¶ 35.

{¶11} Aside from challenging the witnesses' allegedly inconsistent testimony, Mr. James's only discernable argument in support of his challenge to the sufficiency of the evidence is that the State's evidence lacked specificity as to when the alleged abuse occurred for purposes of establishing three of the counts for sexual battery, each of which pertained to a separate year: 2004, 2005, and 2006. While he acknowledges that the victim testified that the abuse started when she was seven years old (in 1996) and continued through her graduation from high school in 2007, he argues that this "broad allusion to a general period of time" is insufficient. We disagree.

{¶12} Section 2907.03(A)(5), under which Mr. James was charged, provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's * * *stepparent[.]" As this Court has stated, "[t]he precise

date of the offense of sexual battery is not an element of the crime." *State v. Covic*, 9th Dist. Medina No. 11CA0055-M, 2012-Ohio-3633, ¶ 28, citing R.C. 2907.03

**{¶13}** The State presented evidence that, if believed, indicated that – aside from a few months after the Children's Services investigation in 2003 – Mr. James engaged in sexual conduct with his stepdaughter several times per week from the time she was seven years old (in 1996) until 2014. Viewing this evidence in a light most favorable to the State, a reasonable jury could have concluded that Mr. James was guilty beyond a reasonable doubt of sexual battery as charged in the indictment.

**{¶14}** In light of the foregoing, Mr. James's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE CONVICTION OF MR. JAMES FOR THE FOLLOWING: RAPE IN VIOLATION OF R.C. [] 2907.02(A)(1)(b); RAPE IN VIOLATION OF R.C. [] 2907.02(A)(2); FOUR (4) COUNTS OF SEXUAL BATTERY IN VIOLATION OF R.C. [] 2907.03(A)(5); AND UNLAWFUL SEXUAL CONDUCT WITH A MINOR IN VIOLATION OF R.C. [] 2907.04(A), WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶15}** In his first assignment of error, Mr. James challenges the weight of the evidence presented at trial. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶16}** In support of his assignment of error, Mr. James argues that the victim and S.H. provided inconsistent and unreliable testimony regarding the events that transpired. He further

argues that their motives render their testimony unreliable. More specifically, Mr. James argues that the victim was not credible because some of her memories of the abuse came to light as a result of therapy, the alleged abuse went unnoticed by the other household members, she recanted her previous accusation of abuse, she wrote loving letters to Mr. James during the period of the alleged abuse, she did not present any of the allegedly incriminating text messages Mr. James sent to her at trial, and financial motivations – rather than the safety of her family – underpinned her decision to report the abuse.

{¶17} Regarding S.H., Mr. James argues that her testimony contradicted the victim's because S.H. testified that she put the victim to bed at night, while the victim testified that he did. Mr. James also argues that S.H.'s testimony undermined the victim's testimony because S.H. testified that she never witnessed or suspected any abuse, that their marriage was stronger after the Children's Services investigation, and that – despite having a better relationship with her daughter as she (the victim) got older – the victim did not disclose the abuse to her until 2015.

{¶18} Mr. James also challenges S.H.'s testimony based upon the fact that some of it pertained to information she learned through non-verbal communication. For example, S.H. testified that the victim did not provide details of the abuse when she and the victim met for lunch, and that Mr. James never verbalized his guilt when she confronted him a few days later. Instead, she testified that the victim told her that Mr. James had been hurting her, and that she (S.H.) understood what the victim meant based upon her appearance and nervous behavior. She also testified that, based upon the way Mr. James responded when she confronted him – including packing some of his belongings and leaving the family home – she understood that he was not going to challenge what the victim had told her.

**{¶19}** As. Mr. James acknowledges in his merit brief, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness testimony over the testimony of others." *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 15. Mr. James's challenge to the manifest-weight of the evidence is based entirely upon the credibility – or alleged lack thereof – of the victim and her mother. The jury, however, was in the best position to observe the witnesses' demeanor and to "use th[o]se observations to weigh the credibility and resolve the conflicts in the testimony." *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 28. This Court will not substitute our judgment for that of the jury. *State v. Willard*, 9th Dist. Medina No. 05CA0096-M, 2006-Ohio-5071, ¶ 10. Having reviewed the entire record, we cannot say that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340. Accordingly, Mr. James's first assignment of error is overruled.

### III.

**{¶20}** Mr. James's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

MICHAEL J. DUFF, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.