[Cite as *State v. Becton*, 2023-Ohio-4841.]

STATE OF OHIO )  IN THE COURT OF APPEALS
)ss:  NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO  C.A. No. 30495

    Appellee

    v.  APPEAL FROM JUDGMENT
ENTERED IN THE
NELSON BECTON  COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
    Appellant  CASE No. CR 20 10 3020(A)

DECISION AND JOURNAL ENTRY

Dated: December 29, 2023

---

CARR, Judge.

{¶1} Appellant, Nelson Becton, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} This matter arises out of a fatal shooting that occurred at the Corner Pocket Bar in Akron during the early morning hours of October 2, 2020. In relation to the incident, the Summit County Grand Jury returned an indictment charging Becton with two counts of murder, both of which carried firearm specifications, and one count of felonious assault with an attendant firearm specification. Thereafter, the grand jury returned a supplemental indictment charging Becton with one count of having weapons while under disability and one count of tampering with evidence.

{¶3} Becton pleaded not guilty to the charges at arraignment and the matter proceeded to a jury trial. The jury found Becton not guilty of the murder charge contained in count one of the original indictment. The jury found Becton guilty of all the remaining charges, including the

murder charge contained in count two of the original indictment. After merging the count of murder with the count of felonious assault, the trial court imposed a total prison sentence of 21 years to life.

{¶4}    On appeal, Becton raises four assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT OVERRULED A TIMELY DEFENSE MOTION FOR ACQUITTAL PURSUANT TO [CRIM.R. 29] AS THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED BY THE STATE OF OHIO TO ESTABLISH A PRIMA FACIE CASE OF TAMPERING WITH EVIDENCE TO WARRANT THE CASE BEING SUBMITTED TO THE JURY[.]

{¶5}    In his first assignment of error, Becton contends that the trial court erred in denying his motion for a judgment of acquittal on the charge of tampering with evidence. This Court disagrees.

{¶6}    Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶7}    When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶8} Becton was convicted of one count of tampering with evidence in violation of R.C. 2921.12(A)(1), which states, "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶9} Circumstantial evidence possesses the same probative value as direct evidence. *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, ¶ 112. Accordingly, circumstantial evidence may be sufficient to support a conviction for tampering with evidence. *Id*.

{¶10} At trial, the State presented evidence supporting the following narrative. During the early morning hours of October 2, 2020, law enforcement responded to the Corner Pocket Bar after receiving reports of a shooting. The officers arrived to a chaotic situation where potential witnesses were fleeing the scene. The officers located a gunshot victim, J.R., lying next to the street outside the bar. The officers attempted to administer emergency medical care but J.R.'s gunshot wounds proved to be fatal. Inside the bar, the officers located a second individual who had been shot. The second individual, Becton's cousin, A.B., survived the shooting. The officers also discovered a woman in the parking lot who had been struck by a vehicle and needed medical care.

{¶11} As the investigation began to unfold, the officers made contact with Becton, who was the owner of the bar.[1] Detective Brandenburg made his way to a small office in the bar. Within the office, there was a desk with two screens that appeared to be part of the security system.

---

[1] At trial, Becton explained that while he owned the property and operated the bar, his sister owned the liquor license.

Detective Brandenburg immediately noticed that the larger of the two screens did not have an input, meaning that there was no feed from the security system to the monitor. While other officers began to collect shell casings in the parking lot, Detective Brandenburg asked Becton to watch the security camera video. When Detective Brandenburg asked to see the security video, Becton indicated that he was "already pulling it up[.]" Detective Brandenburg and Becton began to watch the security video on a small monitor that was located behind the bar. Becton indicated that he used a Vivint security system. At trial, Detective Brandenburg explained that the touchscreen feature allowed the user to cycle through different camera angles and view different clips. Detective Brandenburg explained that, from an evidentiary perspective, he had concerns about systems where the feed could be accessed from multiple devices because the video could be manipulated.

{¶12} As Detective Brandenburg reviewed the security video, he contacted police dispatch regarding the time the incident was reported and he learned that the call came in at 1:33 a.m. Detective Brandenburg and Becton continued to review the video that was taken from different camera angles. At one point, Becton identified the individual who had been shot, although he made no mention of his own involvement in the incident. As Detective Brandenburg reviewed the video from a camera pointed at the parking lot, he noticed that an 8-minute clip was missing, from approximately 1:27 a.m. to 1:35 a.m. The 8-minute gap did not exist in the video taken from other camera angles. During his testimony, Detective Brandenburg explained, "I watched the clips with Mr. Becton for so long, and he continuously played [] through the same clips." After momentarily walking outside the bar, Detective Brandenburg returned and asked Becton if he could review the security video on Becton's cell phone. Becton handed over the cell phone and provided his password. Upon opening the Vivant app, Detective Brandenburg was

immediately able to watch the clip that had previously been missing on the monitor. The missing security video clip showed Becton firing his gun at J.R. during the altercation in the parking lot. After Detective Brandenburg showed the video to the other officers at the scene, Becton was taken into custody.

{¶13} At the close of the State's case, Becton moved for a judgment of acquittal on the tampering charge. While Becton did not dispute that some level of tampering occurred, Becton argued that the State failed to prove that he was the individual responsible for manipulating the security video. The trial court denied the motion. Becton renewed his motion at the close of the evidence, at which point the trial court again denied the motion.

{¶14} On appeal, Becton emphasizes that there were numerous people at the bar on the evening of the shootings. Becton argues that the State failed to prove that he was responsible for altering or concealing the security video that Detective Brandenburg viewed on the monitor. Becton further stresses that he was fully cooperative when Detective Brandenburg asked to see the security video on Becton's cell phone.

{¶15} Under these circumstances, Becton cannot prevail on his argument that the trial court erred in denying his Crim.R. 29 motion. We remain mindful that this Court must view the evidence in the light most favorable to the State when resolving a challenge to the sufficiency of the evidence. *See Jenks*, 61 Ohio St.3d at 279. In this case, Detective Brandenburg needed to review the security video in order to identify possible suspects. As the owner of the bar, Becton had access to the security system. When Detective Brandenburg asked to see the security video, Becton indicated that he was "already pulling it up[.]" Detective Brandenburg testified that he had some concerns because security systems that can be accessed through multiple devices are more subject to manipulation. As Becton repeatedly scrolled though the same clips, Detective

Brandenburg noticed that a critical portion of the security video was missing. Although Detective Brandenburg did not know it at that time, the missing security video clip showed Becton firing a gunshot. Detective Brandenburg was not able to view the missing security video clip until he subsequently obtained Becton's cell phone. This evidence, when construed in the light most favorable to the State, was sufficient to demonstrate that Becton manipulated the security video in order to conceal evidence from law enforcement during the investigation.

{¶16} Becton's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

APPELLANT WAS DENIED HIS RIGHT TO A TRIAL BY JURY UNDER THE FEDERAL AND STATE CONSTITUTIONS AS ONE OF THE JURORS SEATED WAS NOT QUALIFIED TO SERVE PURSUANT TO [R.C.] 2313.17[.]

{¶17} In his second assignment of error, Becton argues that he was deprived of his constitutional right to a trial by jury because one of the jurors in this case was not a resident of Summit County and thus was not qualified to serve pursuant to R.C. 2323.17. Although Becton acknowledges that trial counsel did not object to the seating of this juror, he maintains that this case involved either plain error or structural error. This Court disagrees.

{¶18} R.C. 2313.17(A) provides as follows:

Any person called as a juror for the trial of any cause shall be examined under oath or upon affirmation as to the person's qualifications. A person is qualified to serve as a juror if the person is eighteen years of age or older, is a resident of the county, and is an elector or would be an elector if the person were registered to vote, regardless of whether the person actually is registered to vote.

{¶19} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767

(9th Dist.1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 12.

{¶20} Structural error is limited to certain constitutional errors that "affect[] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, ¶ 22, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 17. Structural error undermines the trial in such a way that the trial cannot be relied upon to serve its purpose of determining whether the defendant is guilty. *See Perry* at ¶ 17. While plain error requires a showing that the outcome would have been different but for the error, structural errors are generally "deemed prejudicial per se and require[] an automatic reversal." *Davis* at ¶ 22.

{¶21} A review of the original transcript filed in this appeal indicated that, at the outset of voir dire, the trial court undertook a brief examination of each prospective juror. During that period of questioning, the trial court eventually turned to Prospective Juror No. 16. The trial court asked, "where do you live, ma'am?" According to the original transcript, Prospective Juror No. 16 inexplicably responded, "New Philadelphia." After several additional questions pertaining to unrelated background information, the trial court inquired as to whether Prospective Juror No. 16 was employed. Prospective Juror No. 16 indicated that she had worked for the University of Akron but she was now retired. When asked about her husband's employment status, Prospective Juror No. 16 stated that her husband had retired from a position with Goodyear. There was no follow-up by the trial court regarding Prospective Juror No. 16's place of residence and neither party raised the issue of whether she was qualified to serve as a juror. Prospective Juror No. 16 was seated on the jury that rendered the verdicts in this case.

{¶22} After oral arguments in this matter, the trial court issued an order indicating that it had come to the court's attention that "the trial court record contain[ed] a misstatement." Specifically, the trial court explained that Prospective Juror No. 16 stated during voir dire that she lived in "New Franklin[,]" which is located in Summit County, and not "New Philadelphia[,]" which is located in Tuscarawas County. Pursuant to App.R. 9(E), the trial court ordered the court reporter to produce, certify, and file a corrected transcript that remedied the misstatement. The trial court also ordered that a copy of the juror panel list in this matter was to be filed under seal. The juror panel list contained the residential addresses of the prospective jurors.

{¶23} When the corrected transcript and the juror panel list were filed and made part of the appellate record, this Court issued a magistrate's order asking the parties to address how the appeal should proceed. The State filed a timely response and argued that the corrected record was properly before the Court. Becton did not file a response to the magistrate's order.

{¶24} In light of this Court review of the corrected record, Becton cannot prevail on his second assignment of error. The corrected transcript indicates that the juror in question stated during voir dire that she lived in New Franklin. This statement is consistent with the information on the juror panel list. Under these circumstances, Becton has not demonstrated that this case involved error with respect to juror qualifications, much less plain error or structural error.

{¶25} The second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL[.]

{¶26} In his third assignment of error, Becton maintains that trial counsel rendered ineffective assistance when he failed to challenge whether Prospective Juror Number 16 was qualified to serve as a juror under Ohio law. This Court disagrees.

**{¶27}** In order to prevail on a claim of ineffective assistance of counsel, Becton must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Becton must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Becton must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534. "This Court need not address both prongs of the *Strickland* test if the appellant fails to satisfy either prong." *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 23, citing *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

**{¶28}** In this case, Becton cannot prevail on his ineffective assistance claim. Becton's argument is predicated on the notion that trial counsel failed to challenge the qualifications of Prospective Juror No. 16 on the basis that she was not a resident of Summit County. As discussed above, the corrected record indicates that Prospective Juror No. 16 was, in fact, a resident of Summit County. Accordingly, Becton has not demonstrated that trial counsel's performance was objectively deficient and, therefore, his ineffective assistance claim is without merit. *See Gannon* at ¶ 23.

**{¶29}** Becton's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶30} In his final assignment of error, Becton contends that his convictions for murder and felonious assault were against the manifest weight of the evidence. Specifically, Becton challenges the conclusion that the State proved beyond a reasonable doubt that he did not act in self-defense. This Court disagrees.

{¶31} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶32} Becton was convicted of murder in violation of R.C. 2903.02(B), which states, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C. 2903.03] or [R.C. 2903.04]." The indictment specified that the pertinent felony was felonious assault pursuant to R.C. 2903.11(A)(2), which states, "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶33} R.C. 2901.05(B)(1) provides as follows:

A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶34} "In Ohio, there is both an objective and a subjective aspect involved in determining whether a defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm: an individual's belief that he or she was in imminent danger must be objectively reasonable, and the individual must have an honest subjective belief to that effect." *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 11.

{¶35} At trial, the State presented the security video of the parking lot showing that Becton fired two gunshots at J.R. from close range. The shooting took place after a chaotic scene unfolded in the parking lot where Becton's cousin had been shot. A woman suffered serious injuries after being struck by the van operated by Becton's cousin. As noted by one officer who reviewed the security video, Becton fired the gunshots at J.R. at a time when the melee had begun to disperse. Becton and J.R. came together near the area where the woman was on the ground behind the van. Becton was holding a gun at that point. There is no indication in the security video that J.R. was in possession of a gun. Although Becton and J.R. were arguing, the video does not indicate J.R. was physically aggressive toward Becton. As the van began to pull away, Becton fired two gunshots at J.R. from close range. J.R. began to run away but he fell to the ground near the street.

{¶36} Summit County's chief medical examiner testified that J.R. suffered two gunshot wounds. One gunshot struck J.R. in the chest and damaged his heart and lungs. The chief medical

examiner testified that J.R.'s death was caused by the gunshot wound to his chest. The other gunshot struck J.R.'s leg and damaged his femoral vein.

{¶37} Becton testified in his own defense at trial. According to Becton, several patrons informed him that there was a dispute in front of the bar involving an individual who had a gun. Becton approached the individual, J.R., and instructed him to leave. Although none of the State's video evidence showed J.R. brandishing a weapon, Becton testified that J.R. pulled out a gun and told Becton not to touch him. At that point, Becton walked to his office and grabbed a gun. Becton testified that he returned to the parking lot to find that a fight was beginning to break out and his cousin had been cornered. Becton testified that J.R. grabbed him and pressed a gun against his back. According to Becton, J.R. threatened to shoot Becton if he intervened in the fight. Becton's cousin then suffered a gunshot wound while trying to exit the scene in a van. At trial, Becton stated that while he was escorting his cousin into the bar, he was told that his mother was still outside. Becton then encountered J.R. in the parking lot a second time. Becton testified that when he informed J.R. that the police were coming, J.R. stated, "Shut the f*** up before I shoot you." Becton testified that, at that point, he believed he was in danger and he fired two gunshots. Becton suggested that J.R. was reaching for a gun at the time the shots were fired. Becton further suggested that he heard additional gunshots as J.R. fled toward the sidewalk.

{¶38} After a careful review of the record, it is apparent that Becton cannot prevail on his manifest weight challenge regarding his self-defense claim. The jury was able to view video of the shooting that led to J.R.'s death. The security video showed Becton firing two gunshots at J.R. from close range. At the time the shooting occurred, Becton was holding a handgun and there is no indication that J.R. was in possession of a gun. J.R. was not physically aggressive toward Becton and the security video does not support Becton's claim that J.R. was reaching for a gun.

Moreover, to the extent Becton testified that he was in fear because J.R stated that he would shoot Becton, we are mindful that "the jury is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Darr*, 9th Dist. Medina No. 17CA0006-M, 2018-Ohio-2548, ¶ 32. This Court will not overturn a conviction on a manifest weight challenge only because the jury found the testimony of certain witnesses to be credible. *See State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Under these circumstances, Becton has not demonstrated that this is the exceptional case where the trier of fact clearly lost its way.

{¶39} Becton's fourth assignment of error is overruled.

III.

{¶40} Becton's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


DONNA J. CARR
FOR THE COURT


SUTTON, P. J.
STEVENSON, J.
CONCUR.


APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.