[Cite as *State v. Campbell*, 2024-Ohio-2245.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.      30603 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LEERIC CAMPBELL | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.      CR 21 03 0844(A) |

DECISION AND JOURNAL ENTRY

Dated: June 12, 2024

FLAGG LANZINGER, Judge.

{¶1}   Leeric Campbell appeals his convictions from the Summit County Court of Common Pleas.  For the following reasons, this Court affirms.

I.

{¶2}   The victim in the underlying criminal case was a seventeen-year-old boy who died from a gunshot wound to his chest on February 15, 2021.  A grand jury indicted Campbell in connection with the victim's death.  Specifically, a grand jury indicted Campbell on the following ten counts: two counts of aggravated murder, two counts of murder, one count of aggravated burglary, one count of aggravated robbery, two counts of kidnapping, one count of felonious assault, and one count of tampering with evidence.  Each count contained an accompanying firearm specification.

{¶3}   A grand jury also indicted Jaemeir Gooden on the same ten counts and firearm specifications in connection with the victim's death.  The record indicates that Gooden pleaded

guilty to complicity in a separate criminal case that is not the subject of this appeal. Campbell, on the other hand, pleaded not guilty. The matter proceeded to a jury trial wherein the following evidence was adduced.

{¶4} The State presented testimony from several witnesses, including two eye witnesses: K.S. and C.G. At the time of the underlying incident, K.S. and C.G. were dating and lived together with another roommate in a two-story apartment. K.S. and C.G. knew the victim and Campbell. Campbell and the victim also knew each other.

{¶5} According to K.S.'s trial testimony, she and C.G. were sleeping on the couch when the victim knocked on the apartment door. K.S. and C.G.'s roommate had padlocked the apartment door from the outside for safety reasons while she (the other roommate) was gone, so the victim entered the apartment through a first-floor window.

{¶6} Upon entering the apartment, the victim appeared excited and worried, explaining that he had just taken about $400 from Campbell. About twenty minutes later, Campbell arrived and knocked on the apartment door. According to K.S., she went to the door while the victim ran upstairs to hide. K.S. testified that Campbell held a gun up to the window of the door and threatened to kill her if she did not let him inside the apartment. K.S. told Campbell that she could not open the door because it was locked from the outside. Campbell then went to the same first-floor window that the victim had used and crawled into the apartment with his gun.

{¶7} When Campbell entered the apartment, he pointed his gun at K.S. and C.G. and asked where the victim was hiding. K.S. testified that she told Campbell that the victim was not there, but Campbell ran up the apartment stairs to look for him. K.S. then saw Campbell throw the victim down the stairs, pick him up, and throw him out of the first-floor window. Campbell then exited the apartment through the same window.

{¶8} K.S. testified that she saw Campbell and another person "rough [the victim] up" while the victim was lying outside in the snow. K.S. testified that she heard the victim begging for his life, saying: "Please don't kill me. Here is your money. Please don't kill me. I have your money." K.S. then saw Campbell shoot the victim.

{¶9} K.S. testified that Campbell and the other person ran toward a waiting car, got in, and sped off immediately after the shooting. K.S. then called 911. During the 911 call, K.S. told the dispatcher that she did not know who shot the victim. K.S. later told the police that Campbell shot the victim.

{¶10} K.S. testified that she grabbed some towels from inside the apartment, exited the apartment through the first-floor window, and tried to apply pressure to the victim's wounds. The police and EMS arrived a short time later, and the victim was pronounced dead at the scene. An autopsy later revealed that the victim sustained several gunshot wounds, and that the fatal wound was a gunshot wound to his chest.

{¶11} The morning after the shooting, K.S. connected with Campbell on Facebook and exchanged messages with him, which the State presented at trial. In the messages, K.S. told Campbell that she saw him shoot the victim, and that he should take responsibility for his actions. Campbell responded that his "gun jammed" and that someone else shot the victim.

{¶12} During her direct examination and cross examination, K.S. admitted that she lied to the 911 dispatcher by telling the dispatcher that she did not know who shot the victim. K.S. also admitted on cross examination that she lied to the police because she originally told them that Campbell did not enter the apartment. K.S. testified that she and C.G. decided to lie about Campbell being inside the apartment because they did not want to get in trouble. K.S. explained

that she feared she would be charged in connection with the shooting and/or that Campbell would retaliate against her.

{¶13} C.G. testified at trial and provided a similar version of the events as K.S., including that he saw Campbell shoot the victim. Additionally, C.G. testified that the victim showed him the money that he had taken from Campbell, which C.G. thought was about $450. C.G. testified that the victim told him he took the money from Campbell because Campbell had taken something from the victim a few weeks prior that was worth roughly the same amount.

{¶14} On cross examination, C.G. admitted that he lied to the police because he originally told them that Campbell did not enter the apartment. Like K.S., C.G. explained that he and K.S. decided to lie because they were afraid they would get in trouble if the police knew that Campbell had been inside the apartment.

{¶15} The State also presented testimony from a neighbor who called 911 after hearing the gunshots. The neighbor testified that he did not see the shooting, but that he saw two people holding guns run toward a waiting car, get in, and speed off. The neighbor testified that he and his girlfriend ran toward the victim, and that his girlfriend tried to render aid. The neighbor testified that no one came out of K.S. and C.G.'s apartment, which was inconsistent with K.S.'s testimony that she exited the apartment and tried to apply pressure to the victim's wounds.

{¶16} The State also presented testimony from police officers and detectives who responded to the scene and/or investigated the shooting. The State played video clips from two different bodycams for the jury. One of the officers testified that he patted the victim down to check for weapons. The officer testified that the victim had neither weapons nor money on his person. Another officer testified that K.S. and C.G. consistently identified Campbell as the shooter.

{¶17} Two days after the shooting, the U.S. Marshals task force located Campbell, arrested him, and brought him to the police station for questioning. The State played the video from that interview for the jury. During the interview, Campbell initially denied being involved in the shooting, but then admitted he was there and that he had a gun. Campbell repeatedly denied shooting the victim, and eventually claimed that Gooden shot the victim. When the detectives asked Campbell what happened to his gun, Campbell stated that it was not his gun, and that he gave it back to the gun's owner. The detectives then asked who that person was, but Campbell refused to identify that person or otherwise tell the detectives where the gun was located.

{¶18} The State also presented location data and text messages that the police extracted from Campbell's cell phone. The location data confirmed that Campbell's cell phone was near the shooting when it happened and that it left shortly thereafter. The text messages extracted from Campbell's cell phone between Campbell and an unidentified person indicated that Campbell initially denied being involved in the shooting. The text messages indicated that the victim had taken money from Campbell, and that Campbell was looking for the victim because he wanted to "beat his ass over [the] money[.]" Campbell eventually admitted in the text messages that he was present for the shooting, but claimed that his gun jammed. Campbell claimed that someone came running from around the corner and started shooting, so he hid behind a bush.

{¶19} After the State rested, defense counsel moved for acquittal under Crim.R. 29, which the trial court denied. Defense counsel presented no witnesses and rested subject to the admission of the exhibits used during cross examination.

{¶20} The jury found Campbell guilty of two counts of involuntary manslaughter (the lesser-included offenses for one of the counts of aggravated murder, and one of the counts of murder), one count of aggravated murder, one count of murder, and both counts of kidnapping.

The jury also found Campbell guilty of the counts of aggravated burglary, aggravated robbery, felonious assault, and tampering with evidence, as well as all of the accompanying firearm specifications. After merging some of the counts and firearm specifications, the trial court sentenced Campbell to a term of life imprisonment plus six years (i.e., three years each for two firearm specifications, ran consecutively), with parole eligibility after twenty-six years. Campbell now appeals, raising two assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE TO SUSTAIN CONVICTION. THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION.

{¶21} In his first assignment of error, Campbell challenges the sufficiency of the evidence presented at trial related to his convictions for aggravated robbery and tampering with evidence, as well as the trial court's denial of his Crim.R. 29 motion related to those charges. Because Campbell's assignment of error is limited to his convictions for aggravated robbery and tampering with evidence, this Court will limit its analysis accordingly. For the following reasons, this Court overrules Campbell's first assignment of error.

{¶22} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In analyzing the sufficiency of the evidence, "[w]e do not evaluate credibility, and we make all reasonable inferences in favor of the State." *State v. Thomas*, 9th Dist. Lorain No. 19CA011578, 2020-Ohio-3538, ¶ 7.

{¶23} R.C. 2911.01(A), under which Campbell was convicted, governs aggravated robbery and provides:

No person, in attempting or committing a theft offense * * * shall do any of the following:

Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

* * *

Inflict, or attempt to inflict, serious physical harm on another.

R.C. 2911.01(A)(1) and (A)(3). R.C. 2913.02(A)(1) governs theft and provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner * * *."

{¶24} Campbell argues that the State failed to present sufficient evidence in support of his conviction for aggravated robbery because the State failed to prove that he committed theft. Campbell argues that the only property claimed to have been taken was the money (about $400-$450) the victim took from him. Campbell asserts that the State presented no evidence indicating that Campbell took the money back from the victim. Campbell alternatively asserts that, even if he did, it was his money, not the victim's money, so he did not "deprive the owner" of any property.

{¶25}  Campbell's arguments lack merit.  The State presented evidence indicating that the victim showed K.S. and C.G. the money he took from Campbell when the victim went into the apartment.  K.S. testified that she heard the victim say: "Please don't kill me.  Here is your money.  Please don't kill me.  I have your money." while the victim was lying outside in the snow with Campbell pointing a gun at him.  When the police searched the victim, the victim had no money on his person.  Thus, viewing this evidence in a light most favorable to the State, a rational trier of fact could have found that Campbell took the money from the victim.

{¶26}  Additionally, Campbell's argument that he did not commit theft because it was his money, not the victim's money, lacks merit.  The "[o]wner" of property for purposes of theft includes any person who has possession of property, even if the possession is unlawful.  R.C. 2913.01(D).  Simply put, even if the victim unlawfully possessed the money, that fact did not prevent Campbell from being convicted of aggravated robbery by taking that money back from the victim at gunpoint.  *State v. Griffin*, 6th Dist. Lucas No. L-11-1283, 2013-Ohio-411, ¶ 20, 24-27 (rejecting the defendant's argument that the State failed to prove that he committed theft because he was simply taking back money that was taken from him); *State v. Padgett*, 2d Dist. Montgomery No. 22024, 2008-Ohio-1166, ¶ 11-14 (affirming the defendant's conviction for robbery and stating that "a person making a monetary claim against another is not privileged to seize the other person's property to satisfy the claim, but must use legal process to satisfy the claim.").

{¶27}  R.C. 2921.12 governs tampering with evidence.  R.C. 2921.12 (A)(1), under which Campbell was convicted, provides that:

> [n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * *[a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *.

"Whether tampering with evidence occurred * * * may be inferred from the circumstances." *State v. Grantham*, 9th Dist. Lorain No. 19CA011468, 2020-Ohio-4418, ¶ 13; *State v. Becton*, 9th Dist. Summit No. 30495, 2023-Ohio-4841, ¶ 9 (same).

{¶28} Campbell argues that the State failed to prove that he had knowledge of an official investigation, that he had "gotten rid of the gun[,]" or that he did so to impair the gun's value or availability as evidence. This Court disagrees.

{¶29} The Ohio Supreme Court has acknowledged that knowledge of a likely official investigation may be inferred when the defendant commits a crime that is likely to be reported, such as a homicide. *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, ¶ 118. Here, the State presented evidence indicating that Campbell shot the victim in the chest outside of an apartment building around 6:00 p.m. while at least two people (K.S. and C.G.) watched. Thus, a jury could reasonably infer that Campbell knew that an official investigation was likely to begin after the shooting. *See id.*; *State v. Copley*, 10th Dist. Franklin No. 04AP-511, 2005-Ohio-896, ¶ 60 ("[A]ppellant's involvement in the shooting triggered cause to know that law enforcement would investigate the incident and would be interested in the firearm" for purposes of R.C. 2921.12(A)); *In re S.D.*, 1st Dist. Hamilton Nos. C-180020, C-180021, C-180022, 2019-Ohio-1867, ¶ 19 (collecting cases and holding that a fact finder could reasonably infer that the defendant had knowledge of a likely investigation because the defendant fired a gun in the presence of other people in a public area).

{¶30} Regarding the State's purported failure to prove that Campbell got rid of the gun, or that he did so to impair the gun's value or availability as evidence, this Court has acknowledged that "[t]he mere fact that a gun was removed from a crime scene does not support an inference that it was taken to impair its value or availability as evidence." *State v. Simpson*, 9th Dist. Lorain No.

11CA010138, 2012-Ohio-3195, ¶ 24, quoting *State v. Lollis,* 9th Dist. Summit No. 24826, 2010-Ohio-4457, ¶ 30. "Nevertheless, the State need not produce direct evidence to obtain a tampering conviction. * * * Circumstantial evidence may suffice." *Simpson* at ¶ 24.

{¶31} Here, Campbell admitted during his interview with the police two days after the shooting that he was present when the victim was shot, that he had a gun on him, and that he gave the gun to someone after the shooting. The detectives then asked Campbell who that person was, but Campbell refused to identify that person or otherwise tell the detectives where the gun was located. Viewing this evidence in a light most favorable to the State, a jury could reasonably infer from the circumstances that Campbell gave the gun to another person to impair its availability as evidence. *See State v. Ammons*, 9th Dist. Lorain No. 20CA011605, 2022-Ohio-1902, ¶ 18-19 (affirming the defendant's conviction for tampering with evidence because the State presented circumstantial evidence indicating that the defendant gave the gun used in a shooting to someone else to make it unavailable for the impending investigation). Campbell's argument, therefore, lacks merit.

{¶32} For the foregoing reasons, Campbell's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶33} In his second assignment of error, Campbell argues that the jury's verdict was against the manifest weight of the evidence. This Court disagrees.

{¶34} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶35} Campbell argues that his convictions were based entirely on the testimony of K.S. and C.G., which was unreliable. In support of his argument, Campbell points to the fact that K.S. and C.G. admitted that they lied to the police about Campbell being inside the apartment. Campbell also points to the fact that K.S. admitted that she lied to the 911 dispatcher by claiming that she did not know who shot the victim. Campbell argues that K.S. and C.G.'s trial testimony substantially differed from their prior statements, and that it was contradicted by other evidence.

{¶36} Campbell's challenge to the manifest weight of the evidence is premised entirely upon K.S. and C.G.'s alleged lack of credibility. But "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. While some of K.S. and C.G.'s trial testimony differed from their previous statements, they explained that they previously lied because they were afraid that they would be charged in connection with the shooting and/or that they were afraid of retaliation. The jury was in the best position to observe K.S. and C.G.'s demeanor, and to use those observations to weigh their credibility and resolve any conflicts in their testimony. *State v. James*, 9th Dist. Lorain No.

17CA011234, 2019-Ohio-2604, ¶ 19. "This Court will not substitute our judgment for that of the jury." *Id.* Having reviewed the entire record, we cannot say that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340. Accordingly, Campbell's second assignment of error is overruled.

III.

**{¶37}** Campbell's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

STEVENSON, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.